## QUINCY *v.* STEEL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted January 4, 1887. — Decided January 31, 1887.

The city of Quincy, Illinois, in 1877 contracted with an Illinois corporation to supply it with gas for four years. Disputes arose, payments were in arrear, and in May, 1881, the city notified the company that it would be no longer bound by the contract. A, a citizen of Alabama, on the 13th August, 1885, filed a bill in equity in the Circuit Court of the United States for the Southern District of Illinois, setting forth that the company had a claim against the city recoverable at law, that he had at different times tried to induce the directors to enforce it, that he was, and for more than four years had been, a stockholder in the company, that he had not succeeded in inducing the directors to institute suit, that his last request was made August 1, 1885, that the claims were about to be barred by the statute of limitations, and he asked for a mandamus to compel the payment of the company's debt. The respondent demurred. This court sustains the demurrer, on the ground that the real contest being between two Illinois corporations, the proper remedy was an action at law by one of those corporations against the other upon the contract, and that A has not, by the averments in his bill, brought himself within the directions prescribed by Equity Rule 94, 104 U. S. ix–x, respecting suits brought by stockholders in a corporation against the corporation and other parties, founded on rights which might be properly asserted by the corporation.

THIS was a bill in equity. Respondent demurred. Decree for complainant, from which respondent appealed. The case is stated in the opinion of the court.

*Mr. George A. Anderson, Mr. Joseph N. Carter, Mr. William H. Govert,* and *Mr. L. H. Berger* for appellants.

*Mr. William McFadon* for appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the Southern District of Illinois.

James W. Steel, the complainant in the Circuit Court, is a citizen of Alabama, and he brings his bill against the city of Quincy, a municipal corporation of the State of Illinois, and the Quincy Gas Light and Coke Company, also a corporation of that state. He sets out a contract between the city of Quincy and the gas company, dated February 14, 1877, the only parts of which in this connection of any importance being that the gas company was to furnish a certain number of lighted lamps for the streets of said city, for which the city agreed to pay a fixed price per annum. This contract was to continue for five years. The city failed to pay the full amount due for gas in any one year, but paid a part of the bill on each year as long as the gas company continued to furnish the gas. On May 11, 1881, the city passed an ordinance declaring that it no longer recognized as binding the agreement between it and the gas company, under which the gas had been furnished, and notifying the company of that fact. The company, however, continued to furnish gas until November, 1883.

Instead of a suit by the gas company against the city of Quincy, in an action at law to enforce the rights of the company by a judgment, and by an appropriate writ of mandamus if the city did not pay the judgment, the present suit is brought by Mr. Steel in his own name, on the ground that he is a stockholder in the gas company; and, as the allegations on this branch of the subject, on which he relies as his authority to maintain this suit, are important, they are given here verbatim from the bill.

He says "that your orator is advised and believes, and so states the fact to be, that the said company has a just and valid claim against said city of Quincy, and one recoverable in the courts by some suit or suits in the name of said company; that your orator has at different times endeavored to

induce the board of directors of said company to institute a suit or suits to recover the said claim against said city; that your orator now is, and for more than four years last past has been, a stockholder in said company; that he now has, and during the entire period last aforesaid has had, seventy-five shares of the capital stock of said company; that said last-named endeavors have been made while your orator was said stockholder; that so far, and up to now, your orator has not succeeded in persuading said directors to institute as aforesaid; that your orator, on August 1, 1885, caused to be addressed to said board a communication in writing, directing and requiring said board to resolve to at once institute suit against said city of Quincy, in the name of said company, in such court or courts as were proper, for the recovery of said claim; that said board of directors laid said communication upon the table, as your orator is informed and believes, and therefore so states, and refused to agree to comply with the request therein contained; that whatever claim said company has by reason of the matters and things above alleged will be barred in considerable part before a meeting of the stockholders of said company will occur; that a part of said claim either has been or is about to be barred by the statute of limitations; that further delay in bringing suit will result in a part of said claim being barred by the statute of limitations; and that this suit is brought in good faith, and for the collection of, and to compel the collection of, what your orator believes to be a meritorious claim."

The decree of the court below was rendered on a demurrer to the bill filed by the city of Quincy, which, being overruled, the city refused to plead further, and decree was thereupon rendered against it. This decree, made on the 1st day of March, 1886, among other things, "orders, adjudges, and decrees that said The Quincy Gas Light and Coke Company have and recover of said defendant city of Quincy the sum of $36,116.21." It then makes provision for the enforcement of this decree by certain orders concerning future annual appropriations to be made by the city for payment out of its annual tax levy.

We are of opinion that the demurrer of the city of Quincy should have been sustained, for the reason that Mr. Steel shows no sufficient ground why he should have been permitted as a stockholder of the gas company to sustain this bill. In order to do this the circumstances must be such as to justify the court, in the interest of justice, to override two cardinal principles of Federal jurisprudence. One of these is, that the litigants in the Federal courts, where the right to sustain such litigation depends upon the citizenship of the parties, shall be citizens of different states. In this case the real right of action and the real contest before the court, if it had proceeded, would have been between the two corporations, organized under the laws of Illinois, and existing and doing business in the same place, to wit, the gas company and the city of Quincy. By sustaining this bill the gas company recovers a judgment in terms against the city for the amount in controversy under the contract.

The other principle which it is necessary to override is, that in the Federal courts the distinction between actions at law and suits in equity has always been kept up. In the present case it is but a plain suit to recover damages on a written contract by the one corporation against the other on account of a violation of that contract, except as Mr. Steel endeavors to bring himself into the case as having rights which he cannot enforce in a court of law. It is purely and simply a suit to recover money on a written contract in an action in the nature of assumpsit.

If, therefore, Mr. Steel, by virtue of being a citizen of Alabama, has any right to prosecute this suit in a court of the United States, and in a court of equity instead of a court of law, it is very obvious that he should make this right plain.

Prior to 1875 cases had come into the courts of the United States, especially into the Circuit Courts, where citizenship had been simulated, and parties improperly made or joined either as plaintiffs or defendants, for the purpose of creating a case cognizable in the Circuit Courts originally, or removable thereto from the state courts; and as it very frequently occurred that both plaintiffs and defendants were willing to seek that court

in preference to the state courts, it had been found very diffi-
cult to prevent these improper cases from being tried in those
courts. In the act of March 3, 1875, an attempt was made to
correct this evil; and by the fifth section of that act it was
declared "that if, in any suit commenced in a Circuit Court,
or removed from a state court to a Circuit Court of the United
States, it shall appear to the satisfaction of said Circuit Court,
at any time after such suit has been brought or removed thereto,
that such suit does not really and substantially involve a dis-
pute or controversy properly within the jurisdiction of said
Circuit Court, or that the parties to said suit have been improp-
erly or collusively made or joined, either as plaintiffs or defend-
ants, for the purpose of creating a case cognizable or removable
under this act, the said Circuit Court shall proceed no further
therein, but shall dismiss the suit or remand it to the court
from whence it was removed, as justice may require."

In the cases of *Hawes* v. *Oakland,* 104 U. S. 450, and *Hun-
tington* v. *Palmer,* 104 U. S. 482, the question of the growth
of the form of invoking Federal jurisdiction, where it does not
otherwise exist, by the attempt of a corporation which cannot
sue in the Federal court to bring its grievance into that court
by a suit in the name of one of its stockholders who has the
requisite citizenship, was very much considered. In order to
give effect to the principles there laid down this court at that
term adopted Rule 94 of the Rules of Practice for Courts of
Equity of the United States, which is as follows:

"Every bill brought by one or more stockholders in a cor-
poration, against the corporation and other parties, founded
on rights which may properly be asserted by the corporation,
must be verified by oath, and must contain an allegation that
the plaintiff was a shareholder at the time of the transaction
of which he complains, or that his share had devolved on him
since, by operation of law; and that the suit is not a collusive
one to confer on a court of the United States jurisdiction of a
case of which it would not otherwise have cognizance. It must
also set forth with particularity the efforts of the plaintiff to
secure such action as he desires on the part of the managing
directors or trustees, and, if necessary, of the shareholders, and

the causes of his failure to obtain such action." 104 U. S. ix–x.

The bill in the present case, although verified by oath, is far from complying with the letter or the spirit of this rule. It does not contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, although the allegation on that subject includes a part of the time in which the city of Quincy failed to pay for its gas; but inasmuch as the sworn allegation in the bill was made on the 18th day of August, 1885, and he there swears that he had been the owner of the stock on which he brings this suit over four years, it is easy to suppose that he acquired this stock after the 11th day of May, 1881, on which day the city by its official action notified the gas company that it repudiated the contract and would no longer be bound by it. And it is not an unreasonable supposition that the gas company, forseeing litigation which it might be desirable for that company to have carried on in a Federal court, immediately after receiving notice of that resolution had this stock placed in the hands of Mr. Steel for the purpose of securing that object, and though the suit was delayed for two or three years, it was probably because the city continued to pay some part of the demand for the gas furnished by the company. The bill does not contain the allegation expressly prescribed by this rule, that "the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance." The allegation of the bill, "that this suit is brought in good faith, and for the collection of, and to compel the collection of, what your orator believes to be a meritorious claim," is by no means the equivalent of this provision of the rule, for it may very well be understood that the party who is seeking to enforce a debt which he believes to be due is acting in good faith for the purpose of compelling its collection, while he may be well aware that he is imposing upon the court to which he actually resorts a jurisdiction which does not belong to it.

The rule also requires that he must set forth with particularity his efforts to secure action on the part of the managing

directors or trustees of the corporation of which he is a member, and, if necessary, of the shareholders, and the causes of his failure to obtain such action. In the case before us he seems to have made but a single effort to induce the directors of the gas company to institute a suit against the city to recover the money, and this was by a communication in writing addressed to the board, August 1, 1885. No copy of that letter is produced, but it is said that the board of directors laid the communication on the table. No copy of the order of the board upon that subject is produced; no effort at conversation with any of the directors, or any earnest effort of any kind upon his part to induce the directors to bring the suit is shown in the bill; no attempt to call the attention of the shareholders to this matter during the four years in which he said he was a shareholder, and during which time the city was failing to pay its debt to the gas company, nor any effort at any of the meetings of the shareholders or of the directors to induce them to enforce the rights of the company against the city, is shown. The most meagre description possible of a bare demand in writing, made sixteen days before the institution of this suit, is all we have of the efforts which he should have made to induce this corporation to assert its rights. This letter was addressed to the board of directors, August 1, 1885, from what point is not stated, but it may reasonably be inferred that it was from Alabama, of which state he was a citizen. The bill itself is sworn to the 13th day of August thereafter. How long a time was left for the consideration of this question by the board of directors, and what earnest efforts Mr. Steel may have made to induce their favorable action, may be easily inferred from the speed with which the bill was sworn to in Alabama and filed after he addressed his letter to the board. The inference that the whole of this proceeding was a preconcerted and simulated arrangement to foist upon the Circuit Court of the United States jurisdiction in a case which did not fairly belong to it, is very strong.

In the case of *Hawes* v. *Oakland*, 104 U. S. 450, 461, in speaking of this perfunctory effort to induce the trustees of the corporation to act, it is said: "He (the plaintiff) must make

an earnest, not a simulated, effort with the managing body of
the corporation to induce remedial action on their part, and
this must be made apparent to the court. If time permits or
has permitted, he must show, if he fails with the directors, that
he has made an honest effort to obtain action by the stock-
holders, as a body, in the matter of which he complains. And
he must show a case, if this is not done, where it could not be
done, or it was not reasonable to require it." Again it is said:
" He merely avers that he requested the president and directors
to desist from furnishing water free of expense to the city,
except in case of fire or other great necessity, and that they
declined to do as he requested. No correspondence on the
subject is given. No reason for declining. . . . No attempt
to consult the other shareholders to ascertain their opinions
or obtain their action. But within five days after his applica-
tion to the directors this bill is filed."

In the case of *Huntington* v. *Palmer*, 104 U. S. 482, 483, the
court says: " Although the company is the party injured by
the taxation complained of, which must be paid out of its treas-
ury if paid at all, the suit is not brought in its name, but in
that of one of its stockholders. Of course, as we have attempted
to show in the case just mentioned, *Hawes* v. *Oakland*, this can-
not be done without there has been an honest and earnest effort
by the complainant to induce the corporation to take the neces-
sary steps to obtain relief." See *Detroit* v. *Dean*, 106 U. S. 537.

We think upon the face of the bill in this case there is an
entire absence of any compliance with the rule of practice laid
down for equity courts in such cases, and of any evidence of
an earnest and honest effort on the part of the complainant to
induce the directors of the gas company to assert the rights
of that corporation. On the contrary, the clear impression
left upon reading the bill is, that it is an attempt to have a
plain common law action tried in a court of equity, and the
rights of parties decided in a court of the United States who
have no right to litigate in such a court, and that there is no
sufficient reason in the bare fact that Mr. Steel is a stock-
holder in the corporation which justifies such a proceeding.

If other evidence were wanting of the soundness of our in-

ferences on this subject, it is to be found in the fact that while the decree in this case was rendered, on the 1st day of March, 1886, a suit was commenced by the gas company against the city of Quincy, on the same causes of action, in the Circuit Court of Adams County, in the State of Illinois, on the 31st day of March of the same year. This fact was brought to the attention of the Circuit Court of the United States at the same term in which the decree now appealed from was rendered, by a petition to vacate and set aside the decree, which that court overruled. It seems very obvious that the gas company, having obtained through the instrumentality of this collusive suit by Mr. Steel a decree settling its rights against the city of Quincy, then brought in its own name a suit in the state court, which it had not dared to do until those rights were adjusted in a court of the United States.

*We are of opinion that the demurrer to the plaintiff's bill ought to have been sustained and the bill dismissed. The decree is, therefore, reversed, and the case remanded to the Circuit Court with instructions to that effect.*